We have two remaining cases. The next case is 25-3174, Spiehs v. Morgan. Mr. Baker. Thank you. Linus L. Baker, appearing on behalf of the appellant, Dr. Spiehs, is somewhere in the room. There he is. And I'd like to do three minutes of reserve rebuttal. Good luck on that. A public library. The genesis of this case started, the library hosted an event. It was about gender markers. Dr. Spiehs comes with a sign outside, standing there silently. One of the promoters of the meeting locks the door, stops him, says you cannot come in here. And he stands there with the sign silently, and they call the police. Was this before or after the free speech activities policy? That's before. Okay. So this is going to be one of the remarkable things. Because what I think, this thing went nuclear. They thought Jews for Jesus was the roadmap, because after these two incidents where the policy just said don't disturb, we filed the lawsuit. And then they turn around and amend their new policy. And it went nuclear. It went, it was every bit as much as Jews for Jesus, there will be no free speech activities in this building. Holding or carrying signs, protesting. Now whatever that means, that's negative speech. I guess you could say I like Ike, but you can't say I don't like him. Using expressive conduct or speech. There's the catch all. Distributing literature. I can't even hand another person a book or a note. Acting as a public speaker. What does that mean? If I have a meeting and I want to address someone in the room, I can't do that. Did your client schedule a meeting and do that?  So that's kind of irrelevant. All it is is just a facial attack on that whole thing, Judge. Panhandling. Requesting signatures, donations, contributions. Would you agree if we focused instead on as applied and we ruled against you that that would just kind of take care of the facial claims? Well, I don't know that it would, Judge. There are two separate inquiries about as applied. Well, if it's as applied, it means your clients were directly affected. And if we address all those, the only other issues that would remain on facial were items that he wasn't involved in. So he doesn't have any standing. Well, he's still subject to them, Judge. What evidence do you have that he was chilled on the things that he never participated in before? Well, the chill is an objective. It's not subjective. So would the idea that they call the police when he do these things, would that chill someone? Yes, it would. Well, it wouldn't chill him necessarily from reserving a room. There's regulations on reserving a room. You're right, Judge. And I'm not really quibbling about the as applied or facial. The record shows that they applied a speech prohibitions and they did it unequally. Can I just make sure that I understand that? Because I think this is an important question for me. I had read your briefs to be that this is solely an as applied challenge. Am I right? No, Your Honor. We did facially attack that and just on his face. Look, in Jews for Jesus, that was a facial attack. The Supreme Court didn't even do a forum analysis. They just said on its face, you cannot have a prohibition that says you cannot have free speech, period. That's a facial attack. In a designated public forum? In a designated public forum, which is what this library is. So it is a facial attack. They simply said, you're not going to have free speech here. Now, we will give free speech to some of the participants, but not generally others. Well, can I push back on that a little bit? You bet. You're the judge. Well, but this will just help me understand it. As I understand it, that there's not any quarrel with the fact that it's a designated public forum, that a reasonable time, place, and manner restrictions are permitted. Do you agree or disagree? I would agree that it's subject to strict scrutiny. Well, intermediate scrutiny is time, place, and manner restrictions. It would be like a sidewalk. It would be like, if it is a designated public forum, it's like a sidewalk. That's the way I characterize it. How's it like a sidewalk? Well, it's a public forum. It's not a traditional public forum. It's a limited public forum. It's inside of a library. It is, and so Doe Albuquerque said, look, you come to the library, you're entitled to get all this information, right? And at the same time, if you're entitled to receive it, you're entitled to give it, and so But the library can adopt a behavior policy, can it not? Well, yes, it has to be reasonable and has to have a connection. Okay, so what's unreasonable about this policy? Well, let me count the ways, Judge. Okay. He got arrested for holding up a blank piece of paper. But the library didn't arrest him. No, the library said he's trespassing, get him out of here. Right. Right. But he did violate their policy. He got put on the patron incident list. Why can't silent protests be disruptive to the ordinary operations of a library? I don't know, like disruptive ideas? Is your problem with the policies that it's vague? Yes. Okay. You've got the videos. He did nothing to disturb anyone. He simply stood there outside with a sign. He didn't say a word. People come and go. And so he didn't disturb anyone. He never disturbed anyone. In fact, there are subsequent incidents where he came in and he had a flag. And another individual, Mr. Irvey, had a similar flag, an LGBT flag. And he had it draped and Dr. Spies had another flag out. They said, you're out, Dr. Spies, and you're in. And that's, as I understand it, the evidence was undisputed that the way that the library had applied its behavior policy and its free expression policy is that it wasn't going to inhibit people with regard to their dress. You can have, say, a t-shirt. Mr. Evis didn't do what your client did. He draped the flag around himself, so arguably it was dress. Your client didn't use the flag as dress. Isn't that a material difference with regard to the way that the policy was applied? I don't think so, Judge. Why? You took a flag. Both of them are flags. So now you're saying the way that I display the flag. No, I'm not saying any of that. I'm saying that that's the way. No, I'm sorry. Yeah, I'm just asking a question. Am I wrong that the policy as applied inhibited sign carrying and protesting? It did not inhibit anyone from having anything on their dress. I might be wrong about that. No, you're not, and that goes to the unreasonableness. What is the purpose of saying I can convey the same message on a shirt or a hat, but I can't put it on this piece of paper? Maybe nothing, but as I understand it, the only way, I mean, I'm trying to keep up with your argument, because you started off with, as I understood it, the First Amendment designated public forum issue. I think we've now segued into your equal protection claim with regard to Mr. Evis and Mr. Bastin, because I don't think, I didn't see any discussion about Mr. Evis or Mr. Bastin in connection with counts one and two. So if we're now on equal protection, isn't it an undisputed inability of the plaintiff to have two comparable individuals, one favored, one unfavored, that were in materially identical circumstances with regard to the policy? And if the policy itself differentiated, I don't know how you can say that there's a fact question about why they, Mr. Evis and your client are, Mr. Spies, are identical in all material ways. Well, to be clear, the policy doesn't give an exception to clothing. It just doesn't say, right? That's why I asked you about the way that it was. Right. So you have two at the identical time. One holds up a flag just like this, and another one has another flag draped around it. Right. One is not prohibited. One is. Right. I say that's unequal treatment. That's the two flags with messages. In fact, the one flag was favorable. The other flag wasn't. We have other instances. I didn't think the flag incident was in the pretrial order. It is. Am I wrong about that? You are, Judge. Okay. It is. He held, David Bastin held a large sign, the public library should be defunded for constitutional violations. That was okay. Well, is that true? I thought that the evidence was undisputed that the library told both Mr. Spies and Mr. Bastin to leave. The police then came, and then after the police talked to your client, Mr. Spies left, Mr. Bastin stayed. But I did not, can you point to me any evidence that the decision to allow Mr. Bastin to stay and Mr. Spies to leave was done not by the police department, but by a library official? Well, the library is the one that tells, instructs the police who can stay and who cannot. So the library governs it. I have evidence that, and if you can, can you point me to it because I didn't see it in the briefing, that there is testimony either by declaration or deposition that the library told the police to tell Mr. Spies to leave and to tell Mr. Bastin that he could stay. They did not tell Mr. Bastin to leave. So that part is in the record. They did tell that Dr. Spies had to leave, the same way with the blank paper. They convening the police? Yes. They told the police, the police and the enforcers. All right. So I'd like to have three minutes of my rebuttal time. I see I've got three, but I'm happy to continue on with this. All right. You can reserve. Okay, thank you. I'm so sorry. I'm not trying to cheat you out of your rebuttal. Maybe he'll have pity on you because it's better. But can I ask you one question about something you said earlier? Sure. I thought Verlo versus City of Martina specifically said that when you talk about a policy that restricts free expression in a courthouse, that it's content neutral to do two things. One, to prohibit picketing and protesting. Where two parts of the ordinance that prohibited those two things in a courthouse. And I thought that our circuit said in a presidential opinion that those were content neutral. Am I wrong about that? I don't think you're wrong about that. Although, when we talk about picketing or protesting, that's an amorphous concept in terms of protesting by its definition is negative. Well, then why did we just get it wrong in saying that protesting was content neutral? Well, and you've got a courthouse. I don't think it's apples to apples. You have a much higher… This is a library, which Doe v. Albuquerque said, okay, look, all bets off. It's free speech. And so I liken it to a sidewalk in that sense. So I think it isn't fair to take that. Reasonable has to be looked at in terms of the other. So just holding up, I mean, I can hold up a message with a placard, have the same message on a shirt. The library says you can't do that, but you can do this. I don't see the reasonableness of that at all. And the idea that if I just hold up a blank piece of paper, that got him on the pits list. And then he was banned without even knowing it. And then he'd show up and say, oh, by the way, you're banned. I know you didn't know it, but now… And every time it's increased. Now what would have been a slap on the hand, now he gets a 90-day ban. And so we have that issue before the court. So hopefully… I'm sorry about your rebuttal. That's fine. I apologize. Good morning. May it please the court. Samuel Green on behalf of the Apple East. The kind of stereotypical image burned in a lot of Americans' minds of a library is this uptight librarian shushing a group of kids for laughing too loudly or talking too loudly. And that's because the essential aspect of a library is that the patrons, the users of the library, have access to information. They can read. They can study in an environment that is conducive to those activities. The courts have held that libraries are limited public forums as far as access goes. But there's no case… Is that right? I mean, I don't want to pick on semantics, but Judge Abell and Doe specifically said it's not a limited public forum. It's a designated public forum. So, yeah, let me articulate that. Crimer, the Third Circuit case, does call it a limited public forum.  Doe and Doe, this court went through the case law and says there's no separate category of a limited public forum, but a library is a designated public forum for a limited purpose. It's been designated open for certain activities, and those are library-related activities such as studying and reading. Well, I hate to keep picking on you semantically, but I know you said that in your brief, but I did not see anywhere in Doe that he called it a designated public forum for a limited purpose. He called it, based on Hawkins, a prior precedent, that it was just a designated public forum. Now, he did acknowledge that a library, by its nature, inciting crimer, that it opens up a forum for particular purposes, reading, writing, and that kind of thing. But I don't know that he included the characterization that you did, designated public forum for a limited purpose. And that might be some of my language, but based on what the court stated in that case. I mean, there's other cases that, you know, the designated, a forum is only open to the extent it's designated by the government body. And here, the library's only been open for certain things. There's no evidence in the record that the library's ever let anyone protest inside there. It's just not there. They've not opened the library to public expression. They've opened it for public access to information, to reading, and to studying. Well, what about Mr. Bastin? You know, free speech died here. That was Dr. Spee's sign. Free speech died here today. Well, Mr. Bastin had a sign, critical of the free speech policy, right? Mr. Bastin was walking through the library with a sign. It's not in the record what his sign said or what was on his sign. Okay. But it is in the record that he was confronted by library staff and treated the exact same way as Dr. Spee's was. Is this the 125? Date-wise? Yes. That was the December 1, yes. December 1, yes. And Mr. Aravi was with him? I don't believe Mr. Aravi was there on that date. There was an incident where Aravi had a sign 8 1⁄2 by 11, and the plaintiff had a sign 11 by 16. That was in the records a little bit unclear, but the incident was right after the November 25th library board meeting. Both men had attended that meeting. They went upstairs. Dr. Spee started protesting in front of the library help desk with a sign that said something to the effect of free speech died here today. Mr. Aravi was just walking around with a copy of the new policy that he had received at the meeting. He wasn't standing there protesting. But he was displaying it. That is not in the record. That is an allegation of plaintiff, but there is no evidence that he was. The record just indicates he was carrying it? Yes. And the record also indicates that the plaintiff was brandishing his sign or waving it? He was standing in front of the library help desk, the information center, and just holding it up. I don't know about brandishing. I'm not sure what brandishing means. So in addressing the equal protection problem, are you saying that because one was using it as speech in a demonstration is a reason to treat him differently than the person who just had the regulations? Is that the distinction? Yes. He was not standing there holding it up. He was just carrying it after the meeting where that had been distributed. The library board had distributed copies of the proposed new policy prior to taking action on it. And you're telling me if I dig into the record, it will indicate that there's no evidence that he was doing, Mr. Aravi, was doing anything but carrying it? That was the interpretation of the library at the time, of the library staff at the time. Was that what the evidence, the record evidence was? I'm not sure how much evidence is on that as far as Mr. Aravi goes. There was a couple of blanket allegations from counsel, and that was the extent of it. Well, if we were to conclude that Aravi was, in fact, protesting by the way he displayed the policy, wouldn't you agree that the difference between the eight and a half by 11 and the 11 by 16 would be immaterial for purposes of the equal protection claim? Probably. But I think the intent behind what the actor is doing would not be, and I think that's where they would not be similarly situated. They're not in every material respect. Interestingly, though, that was the very distinction the district judge made, the district court made, the size of the sign. That was a distinction that the court relied upon. Well, what other distinction in that incident did the court make to take care of the equal protection claim? That's all I saw. I think the court mentioned the flag incident, which was not in the motion. No, no, no. I'm talking about this incident on November 25th. I don't believe the court, and I could be misspeaking, but I don't recall the court's decision focusing on who specifically or what specifically she was referring to when she used the eight and a half by 11 distinction. And maybe I could be wrong on that. Well, you are. She said that in the decision. And you say there was another basis that she ruled on. I want to know what that other basis was for that incident. I cannot answer that at the moment, Your Honor. I don't believe that the evidence is that Mr. Aravi was protesting at that, which would in itself be a material difference, a critical material difference. Without a finding. To what? I'm sorry. Never mind. We're not into the finding. You're saying the flag incident was not in the pre-trial order? As far as the factual summary of it, yes. Correct. Because I think Mr. Baker said that it was. Yes, I heard that. Was the 1125 incident in the pre-trial record? Yes. As far as Mr. Spee's actions and what led to his being asked to leave. As an equal protection claim. I believe it was in the factual section, the factual summary. And he did, and Mr. Spee does say in paragraph 42 of his declaration in district court that Mr. Aravi came in and displayed a print out of the policy. So at least his evidence viewed in the light most favorable to the plaintiff on summary judgment was that he was displaying this paper. Yes, I would not disagree with that. But I guess displaying is undefined. There's no evidence that he was standing there holding it up. I mean, just carrying something through the library could be displaying. It's on display. But we're on summary judgment. I'm not trying to argue with you. I'm just trying to figure it out. You know, if we view paragraph 42 of the declaration and credit it and view the evidence in the light favorable to him, and the only thing that we have from the district court is, well, it was a difference in sizes. I don't know that we can really credit your distinction that displaying was not sign carrying under the policy. You know, what is displaying? Yeah, and I know the, I'm not trying to avoid the question. I'm trying, as I'm looking back here, I'm not sure any of the factual information about Aravi was in the pretrial order, actually. But, so, and that was going back to your question, Judge Murphy. No, that is, I think the district court was looking for similarly situated in every material respect. The evidence was that the library interpreted what Dr. Spies was doing to be protesting, which was prohibited. They did not interpret what Mr. Aravi was doing to be protesting. And that was not fleshed out factually. Plaintiff did not flesh that out factually. I'm sorry. Again, I'm not trying to argue with him. I'm just really trying to figure it out. It was inclusive of protesting and sign carrying. And so maybe Mr. Aravi wasn't protesting, but he was certainly sign carrying if he was displaying the paper. Well, he was carrying a policy that was just handed to him by the library. Whether he was displaying a sign or not is, I guess, debatable. What is the source of evidence that we would be relying upon? Would it be a declaration from librarian staff as to what Mr. Aravi was doing? Because there's a possibility that the district court put its own polish on it, called it declaring, whatever. But what we need to do is look at the record. So what's the source of the evidence of what Mr. Aravi was doing on 11-25? I don't believe there really is any. The record is pretty empty there. And there would be declarations, but again, the library staff, when they thought other people were protesting, that is in the record, like Mr. Bastin. He was walking through, holding something, and they thought he was protesting. They created a PITS report for that. They asked him to leave. They treated him the same. It was something that was interpreted completely differently that maybe they didn't interpret. And yeah, it's not in the record. But that's inherent in running a library. You know, the staff, for any behavior, the staff has to make those judgment calls. I'm just trying to get to the source of it. Did Mr. Aravi submit a declaration or an affidavit?  But the plaintiff did.  And so, and some of the librarian staff did. Yes. So what we have to do is search around those to see what is stated in the declarations as Mr. Aravi's activities on 11-25. Yes, that would be the extent of it. Is that what we have to do? Yes. That would be the extent of the evidence on that. How would holding up a blank piece of paper be impermissible under the policy? Well, it's the behavior itself. It's not the message. And that's the exact point. The library is not regulating the message. They're regulating the conduct and the behavior. And protesting is protesting whether there's a message being conveyed, whether it's a vague message being conveyed, whether there's no message being conveyed. The message is irrelevant to the library's policy. It's irrelevant to their decision making on it. But it's negative. Protesting by definition is negative. If I walk around downtown Denver saying our system of justice is second to none, am I protesting? I think so. And I think some of that goes to the context here, the sequence. Dr. Speece had been in the library multiple times in a row, several days, and had stood in the same place holding up messages. And then he goes to the same place holding something up, and it was blank. But that's the experience of the staff, like the intent. The behavior was protesting. That was the action that was being done. Whether a specific message was contained on the sign in the context or the sequence of those events, he was protesting. And he was protesting, presumably, the new policy. But that's a presumption, not on the record. But the blank sign, I think, clearly shows that this is not content-based restriction. This is content neutral. On that day? On every day. There's nothing in the record that shows, at any point, a content-based decision. Okay. They did not allow the protesting regardless. And I know it may not be in the pretrial order, but what's the distinction between the individual having the rainbow flag driped over his shoulders and Speece carrying a Gadsden flag? The intent behind it. The library doesn't regulate messages with clothing. I mean, that came up earlier. So if he draped the Gadsden flag over his shoulders, that would have been the material difference? That would be my understanding. That wouldn't even have created an issue, yes. But I don't understand. Now, you said it's the intent. We're not looking at it as intent. We're looking at whether or not what is going on is disturbing or potentially disturbing to the patrons of the library, right? Yes. We don't care one hoot about his intent. That is correct. That is correct. And I probably didn't say that very articulatively. But one person was protesting with a flag. One person was simply wearing one. There is a big difference when the policy prohibits protesting. It doesn't prohibit wearing scarves or wearing flags as scarves. All right. Your time's expired. You could give Mr. Baker two minutes. Thank you, Your Honors. Your Honors, you have video. In this modern day and age, they have video. They videotaped everything. And the court, the lower court, had that video. Did it have video of the 1125? Yes. Yes. And is video on Mr. Iravi? Yes. In fact, you'll see in that video where both of them are out there holding it, they can't get anybody's attention. People just walk on by. All I'm saying is there's video. Okay, so what you're saying is the video says that he was flashing the 11 by 16 tape around. Yes, he was doing just like that. You can view it for yourself. They were absolutely quiet doing that. So you're saying they were both doing the same thing. Absolutely. And one was nabbed and the other one was not. Every time. Iravi, his name is Iravi, he couldn't get busted. It was always Dr. Spies was the naughty child. And did you include a claim in the pretrial order for this, an equal protection claim on this 1125? Yes. Yes, Your Honor. And I want to point out in the PIPs, the only citation they ever wrote up Dr. Spies was not for disruption or doing anything. It was you just didn't obey our orders. Now, and so I would urge you, because the lower court wouldn't watch the videos. Would you do me a favor? Would you supply a 28-J letter that identifies the video and the time stamp and where we can put the record? I can do that, Judge. I think we did that in the lower briefing and all that. But yes, I can do that. So you don't have to worry. Specifically where in the video? Yes. We sent video. I think they sent video, we sent video. So I can pinpoint the time stamps on that so you don't have to. All right. Time's expired. Thank you. We appreciate your arguments. You're excused and the case is submitted.